Robert William **ALTIMUS**, Plaintiff,

v.

**MANHOOD FOUNDATION, INC.**, et al., Defendants.

**No. 73 Civ. 599.**

United States District Court, S. D. New York.

Dec. 21, 1976.

Nicholas A. Robinson, New York City, for plaintiff.

Pierce Paley, New York City, for defendants Robert Robinson and Manhood Foundation, Inc.

Garey & Garey, New York City, for defendants Society of St. Vincent De Paul, Virginia Russell and Joseph M. Fitzpatrick.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for Elliott Richardson, Maurice Sigler, Gerald E. Murch, William T. Woodward, Jr., George J. Reed, William E. Amos, Paula A. Tennant, Curtis C. Crawford, Norman A. Carlson and Ralph A. Aaron; V. Pamela Davis, Asst. U. S. Atty., New York City, of counsel.

LASKER, District Judge.

In 1973 Richard Altimus, a federal prisoner incarcerated at Sandstone, brought this action for injunctive and declaratory relief, and for damages, against members of the United States Board of Parole and the federal Bureau of Prisons, claiming that his application for parole was wrongfully denied without adequate procedural protections. Mr. Altimus also sued several private corporations, individuals and religious groups, claiming that they "deliberately and wilfully" sought to "prevent plaintiff from securing an effective parole plan," by virtue of their activities in apparently providing him with a parole release plan.

Mr. Altimus first applied for parole in January of 1972, at which time institutional staff indicated to him that his parole release plans would be considered too vague by the parole board; he withdrew his application and, after completing arrangements with the private defendants, reactivated the application in June, 1972. On August 10th, he was advised that he would have a hearing before a parole board hearing examiner (Mr. Vodvarka) on August 14th. Following this hearing, the examiner recommended to the Parole Board that Mr. Altimus be denied parole, but that his case be reviewed by a Progress Report in April, 1973. Without recording the reasons for its action, the Board (acting through two of its members) simply denied parole and "continue[d] to expiration" meaning, no anticipated further review. Mr. Altimus was mandatorily released from confinement in October, 1973. On October 7, 1974, (opinion filed October 8) the court denied plaintiff's motion for partial summary judgment and for a declaratory judgment that the Board's action in denying him parole violated his Fifth Amend-

ment due process rights, on the grounds that the claims for relief had been mooted by his release from prison and by subsequent development of administration regulations which afforded the sought for relief.

Altimus now seeks partial summary judgment against the federal defendants on the liability aspect of his claim for damages, and also seeks to reargue the court's earlier decision of October 8, 1974. The federal defendants move to dismiss for failure to state a cause of action, failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. They are joined by the private defendants, whose previous motion to dismiss for lack of jurisdiction and failure to state a claim had been denied on January 28, 1974 without prejudice to renewal after discovery was had.

*I. Plaintiff's Motion to Reargue*

■ Plaintiff's motion to reargue the decision of October 8, 1974 is denied. Plaintiff does not point to any legal authority or factual material which was previously overlooked but argues merely that declaratory relief is a necessary predicate to vindication of his claim for damages which is still before this court.[1] This is not a function of the Declaratory Judgment Act, and, for the reasons outlined in the earlier opinion and for other reasons which will appear below, the motion to reargue is denied.[2] See *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam).

*II. Plaintiff's Motion for Partial Summary Judgment; Federal Defendants' Motion to Dismiss*

Plaintiff claims, in essence, that the federal defendants (1) violated his constitutional right to procedural due process by *inter alia*, failing to provide him with reasons for his parole denial, and (2) violated his rights under the federal Administrative Procedure Act by not affording reasons for his parole denial. (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Motion to Dismiss, April 29, 1976 at 2–3) Since it is conceded that plaintiff was never informed of the reasons for his parole denial, plaintiff claims to be entitled to summary judgment on the question of liability.

■ It is beyond dispute in this circuit that a prisoner has a due process right to be informed of the reasons for his parole denial. *United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole*, 500 F.2d 925 (2d Cir.) *vacate as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); *Haymes v. Regan*, 525 F.2d 540 (2d Cir. 1975). The necessity of this constitutional requirement is poignantly illuminated by the instant case: Mr. Altimus, who had gone to great lengths to prepare a parole release plan which he thought would be acceptable to the Board, and who participated in rehabilitative programs at Sandstone and believed himself to be ready for parole, was denied parole. Despite repeated inquiries by himself, members of Congress, and other "free world" persons desirous of aiding him in securing parole release, he was never informed of the reasons why he was denied parole. The only response ever received to these inquiries was an iteration of the general factors considered by the Board in reaching its decisions. Indeed, the parole file on Mr. Altimus, made available to him in the course of this litigation, reveals that no reasons were ever recorded for the Board of Parole's actions in his case.

---

1. The other basis on which plaintiff urged the court to reconsider its October 8, 1974 ruling is that the due process claim to access to the files was not moot since discovery of the files was necessary to prosecute the claim for damages. The government's voluntary disclosure of the full contents of Altimus' parole file to his counsel eliminates that as a basis of the motion to reargue.

2. In addition to the developments discussed in the earlier opinion, the Parole Commission Act of 1976, Pub.L. 94–233 (March 15, 1976) 18 U.S.C. § 4206 *et. seq.* (1976 Supp.) has afforded virtually every right claimed by the plaintiff and not previously rejected by the appellate courts. Moreover, in light of the disposition of the federal defendants' motion to dismiss, the motion to reargue for purposes of obtaining a declaratory judgment in aid of the claim for damages is moot.

We are compelled to agree with Mr. Altimus that the Board's response to his repeated efforts to find out the reasons for his parole denial and to his effort to seek reconsideration was "bureaucratic and oblique" (Altimus Affidavit of February 18, 1974, ¶ 28); "the Board refused even to tell me why they would not tell me the reasons for my parole turndown." (Altimus Affidavit *supra*, ¶ 30) Moreover, his analysis of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), has been adopted by many courts which have held that there is simply no legitimate state interest in not providing prisoners with the reasons for parole denial, particularly since "the prospect of parole can[not] be a positive force in my rehabilitation as a prisoner if the reasons for denying me parole are hidden. What can I do? How can I change?" (Altimus Affidavit, ¶ 32) See *United States ex rel. Harrison v. Pace*, 357 F.Supp. 354 (E.D.Pa.1973); *Childs v. U. S. Bd. of Parole*, 371 F.Supp. 1246 (D.C.1973), *aff'd in part*, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974); *Bradford v. Weinstein*, 519 F.2d 728 (4th Cir. 1974), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

■ However, because the only presently available relief is an award of damages, the public official defendants may interpose as a complete defense their good faith reliance on existing procedures which they reasonably believed to have been constitutional. See *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Woods v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Economou v. U. S. Dept. of Agriculture*, 535 F.2d 688 (2d Cir. 1976). On this defense (which has been raised), they are entitled to prevail as a matter of law and hence, the claim for damages is one on which relief cannot be granted and must be dismissed. F.R.Civ. Proc. 12.

■ Government officials in the performance of their public duties are not "charged with predicting the future course of constitutional law." *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *McKinney v. DeBoard*, 324 F.Supp. 928 (E.D.Cal.1970). When a new constitutional rule under which a defendant is sued abruptly departs from the rule in effect at the time of the alleged deprivation of constitutional rights, the plaintiff, as a matter of law, can have no claim for damages. See *Baxter v. Birkins*, 311 F.Supp. 222, 225 (D.Colo.1970) (3-judge court); *McKinney v. DeBoard, supra*, 324 F.Supp. 928. Altimus was denied parole in September of 1972; he was mandatorily released from custody in October of 1973. During this entire time period, the prevailing rule in this circuit was that of *Menechino v. Oswald*, 430 F.2d 403 (2d Cir. 1970) *cert. denied*, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), which held that a prisoner seeking parole release had no interest entitled to due process protection in the grant or denial of parole; and that consequently, he was entitled to no procedural rights whatsoever: no right to reasons for denial, no right to be informed of the charges against him; no right to counsel, or to call or confront witnesses. This circuit did not change its position until 1974, in the *Johnson* case. That this change was an abrupt one, and one not necessarily dictated by the decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (which occurred two months before Altimus was denied parole) is indicated by the vigorous dissent of Judge Hays in the *Johnson* case, and the subsequent diversity of opinion on this subject in the various federal courts of appeal. *Compare Childs v. U. S. Bd. of Parole, supra*, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974); *Bradford v. Weinstein, supra*, 519 F.2d 728 (4th Cir. 1974); with *Bell v. Kentucky Bd. of Parole*, 510 F.2d 972 (6th Cir.), *remanded for consideration of mootness sub nom. Scott v. Kentucky Bd. of Parole*, —— U.S. ——, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976). Were Altimus claiming that he had been denied reasons after the *Johnson* decision, his claim would stand on a different footing, and could certainly not be dismissed as a matter of law; however, the defendants' failure to ·comply with constitutional requirements not enunciated until after the action complained of occurred and in fact expressly

rejected just two years beforehand cannot be a basis for liability in damages, whether they are sued individually or in their official capacities.

■ Similar reasoning requires dismissal of any claim for damages based on a failure to follow the requirements of the Administrative Procedure Act. Whatever the courts may finally decide about its applicability to the federal parole board, our research indicates that up through the time in question here every court which had considered the question found that the APA did not apply to the federal Parole Board. See *Hyser v. Reed*, 115 U.S.App.D.C. 254, 318 F.2d 225 (D.C.Cir.) (en banc), *cert. denied*, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963); *Hiatt v. Campagna*, 178 F.2d 42, 44–45 (5th Cir. 1949) (dictum), *aff'd by equally divided court*, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950). *Cf. King v. United States*, 492 F.2d 1337 (7th Cir. 1974); *Mower v. Britton*, 504 F.2d 396, 399 (10th Cir. 1974) (holding that APA requirement of reasons for parole denial did apply to the federal board was not retroactively applicable).

■ Plaintiff argues that the federal defendants were in fact using a form on which other prisoners were advised of reasons for their parole denial at the time he was denied parole, that this in turn manifests the Board's awareness of the constitutional requirements that reasons be provided, or (as Professor Davis argued in 1970) of the applicability of § 555(e) of the APA, which suggest that there is at least an issue of fact as to their good faith. However, plaintiff's Exhibit F, submitted to support this factual contention, is an *undated* form for recording reasons for parole action and parole denial allegedly used by the Board. Moreover, plaintiff's Exhibit L confirms the government's position that reasons for parole denial were given on an *experimental* basis beginning in late 1972 to prisoners at five selected federal institutions (not including Sandstone, where Mr. Altimus was incarcerated). Additional confirmation that the giving of reasons was in an experimental and limited stage at that time is found in *Battle v. Norton*, 365 F.Supp. 925, 926 (D.Conn.1973). There, Judge Newman found that the Board began an experimental program of supplying reasons for parole denial in December, 1972 at the Board's Northeast Region institutions; because the program was experimental, Judge Newman refused to hold that the Board's failure to give *all* reasons for its decision (in September of 1973) violated any rights of the would be parolee. The Board was and is free to experiment with improvements in its decisionmaking without those experiments affording a basis for liability where the "experiment" is later held to have been required by due process and an inmate not included in the experimental group claims his rights were violated and seeks damages.

In *United States ex rel. Harrison v. Pace*, 380 F.Supp. 107 (E.D.Pa.1974), on which plaintiff relies to support his argument that he has a cause of action for damages arising out of violations of his Fifth Amendment due process rights, the court dismissed the damage claims against the federal defendants (after holding that they did state a cause of action) on the grounds that defendants were protected from liability by their good faith reliance on existing law and procedure. There, the refusal to afford reasons for a denial of parole in April, 1972, had continued up through 1974. Although the procedural posture of that case was somewhat different from the instant one, in that the defendants had moved for summary judgment and had submitted uncontested affidavits which established their good faith, in light of the caselaw in this circuit at applicable time periods the court is justified in holding as a matter of law that defendants cannot be liable for their failure to afford Altimus procedural rights later held to be constitutionally required. See also *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding *re* procedural due process requirements at prison disciplinary proceedings not to be retroactively applied).

Accordingly, plaintiff's motion for summary judgment is denied, and the federal

defendants' motion to dismiss the complaint is granted.

### III. The Private Defendants' Motion to Dismiss

The private defendants who have moved to dismiss the complaint on the grounds that it fails to state a claim upon which relief can be granted are: The Society of St. Vincent De Paul, a charitable religious organization and two of its employees, Joseph Fitzpatrick and Virginia Russell, who referred plaintiff to the private defendant Manhood Foundation when he wrote to them asking for help in formulating a release plan; and the Manhood Foundation, a counselling service for ex-convicts and its employee Robert Johnson, who found a construction job with H.F.J. Construction Co.[3] for plaintiff in the summer of 1972 and who volunteered to serve as his community parole adviser. On January 28, 1974 the court denied an identical motion to dismiss made by these defendants without prejudice to renewal after plaintiff had been allowed a reasonable time for discovery of the federal defendants. The motions to dismiss were renewed by letters dated March 25 and April 10, 1975 on behalf of the Manhood Foundation, Inc. and Robinson, and by letter dated April 7, 1975 on behalf of the remaining private defendants, the Society of St. Vincent De Paul, Joseph M. Fitzgerald and Virginia Russell.

■ The court agrees that there is no jurisdiction under 42 U.S.C. § 1983 as against these defendants; there are simply no plausible allegations that they were acting in concert with any of the official defendants, and the mere fact that they are incorporated under the law of a state does not create sufficient state action to sustain a claim under § 1983.

However, there is diversity jurisdiction between plaintiff, who resides in Florida, and the private defendants, all of whom reside in New York. Plaintiff seeks well over $10,000. damages from the private de-

fendants, and in light of the claimed injury, it is reasonable to assume that the jurisdictional amount is met. See *United States ex rel. Harrison v. Pace, supra,* 380 F.Supp. at 110, n.1.

As has been indicated, the primary reason for denying the earlier motions to dismiss was to allow plaintiff time for further discovery. In the two years that have passed since that decision, plaintiff has had complete access to the federal parole board's file on him and, so far as the court is aware, has conducted no other discovery of the federal defendants. Discovery of the private defendants was stayed pending discovery of the federal defendants. It is our view that the elements of a cause of action against these defendants under state law simply do not exist and that the motion to dismiss should be granted.

■ The plaintiff has never set forth precisely the legal theory under which he seeks to hold these private defendants liable for his parole denial. There is no factual basis for a state law contractual claim; plaintiff does not claim to have given any consideration for the defendants' services in providing or attempting to provide him with an acceptable parole release plan. Thus, any claim plaintiff has must sound in tort, and would be for the intentional or negligent preparation of a parole release plan which the defendants knew or should have known would be inadequate and which caused the Board to deny him parole when it otherwise would have granted parole.

■ Thus, to establish a cause of action against these defendants, plaintiff would have to be prepared to show the following: 1) that defendants undertook to provide him with an adequate parole release plan; 2) that defendants negligently or intentionally failed to provide such a plan; 3) that their failure caused the Board to deny him parole when it otherwise would have granted him parole; and 4) that he was thereby injured.

---

**3.** HFJ and its employee, Harold M. Stewart, named as defendants, have never appeared in this action, and appear to be in default.

First, it must be noted that the plaintiff does not claim that these defendants purported to assure him that the parole plan would be adequate. (See ¶¶ 5–13 of Altimus Affidavit, signed February 18, 1974; ¶¶ 13–18 of the Amended Complaint.) Indeed, it would appear that the individual defendants agreed to perform certain discrete tasks for Mr. Altimus: to place him in contact with a counselling service; to find him a job; to agree to act as his parole adviser. (*Id.;* Affidavits of Fitzpatrick and Russell, filed November 8, 1973; Affidavit of Robert Robinson, filed October 17, 1973) And it further appears from their uncontested affidavits and the documents in evidence before the Parole Board, that they performed these tasks. See Plaintiff's Exhibits C, D and E.

Second, and more significant, the plaintiff has pleaded absolutely no facts which show that the "plan" was actually inadequate in any way. Indeed, after reviewing the documents submitted by these defendants on his behalf the court is in agreement with Mr. Altimus' original belief (¶ 13, Affidavit) that "all preparation had been thoroughly and competently made for my parole application and that through the Archdiocesan Central Council, the Manhood Foundation and Robinson, and the H.J.F. Company, I had a plan which would be acceptable to the U.S. Board of Parole." Although the complaint alleges that the defendants knew or should have known the parole plan was inadequate, he has nowhere informed the court in what way the plan was in fact inadequate; much less of the basis for his belief concerning these defendants' knowledge; and after three years, it is not too much to expect that if there were an objective basis on which it could be claimed that the plan at the time it was submitted was inadequate, it would be asserted.

Finally, and perhaps most devastating to plaintiff's claim against these private defendants, is the question of causality. There is no evidence whatsoever that Altimus was denied parole because of any inadequacy in his parole plan. Altimus seems to be relying on the recommendation of the prison "case management" team in the Special Progress Report prepared on August 2, 1972:

> "The Case Management Team would not object to a parole if the Board considers his parole plans realistic and feasible."

Altimus apparently wants the court to infer that this recommendation was tantamount to an assurance that if the parole plan were adequate, he would be granted parole; and since he was not granted parole, it must be because of the parole plan. To work this lukewarm endorsement of parole by prison staff into such a chain of inference is wholly unwarranted. There is (or certainly was) no *right* to be released on parole, even with a splendid parole release plan. Under the parole statute in effect at the time of these events, the decision whether or not to release on parole was clearly committed to the discretion of the Parole Board:

> "If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole." 18 U.S.C. § 4203(a).

Altimus was not entitled to rely on this statement by the institutional staff as any kind of assurance that he would receive parole if his plan met Board approval, and the private defendants are not liable to him for any such misplaced reliance.[4]

Moreover, those portions of the hearing examiner's summary which plaintiff has chosen to put before the court affirmatively

---

4. It must be noted that plaintiff's statement of facts in ¶¶ 10–11 of his Affidavit in Support of the Motion for Partial Summary Judgment totally belies his claims in the second cause of action in the Amended Complaint, in which he asserts that the federal Bureau of Prisons defendants inadequately or negligently investigated the adequacy of his parole release plan.

show that the hearing examiner did not rely on the adequacy *vel non* of the parole plan as a basis for his recommendation that parole be denied, with reconsideration in April 1973. Indeed, there is absolutely nothing in the file to indicate that anyone viewed the parole plan per se as inadequate. The Board overruled the hearing examiner to the extent that it simply denied parole, and continued him to expiration of his sentence (which occurred in October of 1973), without provision for interim review. It is true that the Board's failure to record its reason for its actions makes it impossible to determine, with certainty, that its view of the parole release plan did not play a part in its decision; however, it is even less possible to prove that it did, and the burden is on the plaintiff to establish causality. Finally, any injury to Altimus would appear to flow from the Board's failure to disclose its reasons and not from any claimed inadequacy in the plan—for if the Board had informed Altimus of its reasons, and if they indicated an inadequate parole plan, Altimus could have attempted to remedy the defect. (In fact, Altimus did arrange for a new plan for parole release and a new advisor; the Board when advised of these facts, declined to change its earlier decision.) (See Plaintiff's Exhibits M, N) Taken together with plaintiff's complete failure to specify in what respects the plan could be regarded as defective, or the extent to which defendants knew or should known of the defect, and the absence of any factual allegation that the defendants had assured plaintiff that it *would* pass muster with the Parole Board, it is now apparent that the "sketchy" allegations which the court found could be liberally construed to frame a cause of action back in January of 1974 simply do not do so. To permit any discovery of the private defendants at this time, when the cause of action against them has been revealed as lacking in so many critical elements as to be almost frivolous, would be altogether unjustified.

This is not to say that the court does not sympathize with Mr. Altimus, who was certainly treated in an insensitive and unjustified fashion by the federal defendants.

That it was not clearly unconstitutional for them to act in such a manner in 1972 and 1973, and to deny Mr. Altimus parole despite an apparently adequate parole plan without explaining the reasons for its decision, is an upsetting reflection on how long it has taken our legal system to recognize this basic constitutional right. However, to permit these proceedings to bleed on with respect to the private defendants would also be unjust; for there is simply *no* evidence to support the claimed cause of action against them.

The motion of the private defendants to dismiss the complaint against them is granted.

The complaint against the federal defendants is also dismissed, and the plaintiff's motion to reargue and for partial summary judgment are denied.

It is so ordered.