Ade **ADEKALU, pro se, Plaintiff,**

v.

**NEW YORK CITY and New York State, Defendants.**

**No. 76 Civ. 3297.**

United States District Court, S. D. New York.

May 11, 1977.

Ade Adekalu, pro se.

W. Bernard Richland, Corp. Counsel of the City of New York, New York City, for defendant New York City; Jack Cherrill, Asst. Corp. Counsel, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendant New York State; Alan R. Smulevitz, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Dr. Ade Adekalu, a Nigerian citizen now living in New York sues the City and State of New York for damages arising out of claimed violations of his Constitutional rights under the Fourth and Fourteenth Amendments. Jurisdiction is founded on § 1331 and directly upon the Fourteenth Amendment. Both defendants move to dismiss.

Since the only relief sought is money damages, the claims against New York State must be dismissed. The Eleventh Amendment stands as an absolute bar to such a suit against the State, notwithstanding any provisions of State law in which the State consents to suit in State court. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). The discussion which follows is addressed only to the claims against New York City.

### I.

The essential facts out of which this action arose, as set forth in *People v. Adekalu*, 51 A.D.2d 941, 381 N.Y.S.2d 483 (1976), are these: On the evening of March 31, 1973 a young woman complained to the police that she had just been raped, and led three New York City detectives to an apartment in Manhattan in which the alleged rape occurred. When plaintiff answered the door, he was identified by the complainant as the assailant. The detectives thereupon arrested Dr. Adekalu, handcuffed him and led him into his own living room. Although there is no question that this arrest was with probable cause and valid, the instant claims arise out of the officers' subsequent actions.

The officers had no warrant to search the apartment. One of the detectives, ostensibly seeking to observe the water bed on which the complainant alleged certain of the acts to have occurred, proceeded from the living room to the doorway of Dr. Adekalu's bedroom. On viewing the water bed from the doorway, the officer went into the bedroom for the "professed purpose" of examining the water bed. He turned around and, looking into an open walk-in closet, observed a clear plastic bag which he believed to contain marijuana. The detective then took possession of what turned out to be a small quantity of marijuana.

Dr. Adekalu was subsequently tried on various charges. His first trial, on charges of rape, assault and unlawful imprisonment resulted in acquittals on all counts. He was then charged with possession of marijuana and attempted bribery of a police officer. The trial judge denied a motion to suppress the marijuana. Dr. Adekalu was acquitted of the bribery charge but convicted of possession of marijuana and sentenced to three years imprisonment.

Plaintiff appealed *pro se* from his conviction and sentence. The Appellate Division unanimously reversed, holding that

"The search was not conducted pursuant to a valid search warrant, or incidental to the completed arrest outside the searched premises or with defendant's consent. . . . The chief evidence seized should be suppressed because it was the product of an illegal search, although the arrest was proper . . . "

The court added:

"We should be ever mindful of the observation of the Supreme Court: 'The plain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminatory at last emerges . . . ' "

Pursuant to the Appellate Division decision, Dr. Adekalu was released from custo-

dy on March 24, 1976 after having spent eleven months in Dannemora. His complaint was filed on July 26, 1976. He claims that as a result of the unlawful search and subsequent imprisonment he has suffered irreparable psychiatric harm, emotional degradation and loss of professional and familial status and respect.

## II.

The City argues that the action is governed by the State statute of limitations contained in § 50–i of the General Municipal Law, which provides that

"No action . . . shall be prosecuted or maintained against a city . . . for personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless . . . the action . . . shall have been commenced within one year and ninety days after the happening of the event upon which the claim is based."

It argues that since this claim is based on an "event," that is, the arrest, occurring in March, 1973, this action is time-barred because the complaint was not filed until July 26, 1976.

In *Fine v. City of New York*, 529 F.2d 70 (2d Cir. 1975) the Court of Appeals held that the "controlling statute of limitations for a claim founded directly upon the Fourteenth Amendment" against the City of New York arising out of an allegedly illegal arrest by city police is the one year and ninety day period contained in § 50–i. Fine's apartment had been searched without a warrant and various articles—including gambling records, cash and personal effects—were seized. Fine successfully moved to suppress the fruits of that search in State court, and all charges against him were accordingly dismissed. The Court of

Appeals remanded to the district court the question whether the federal action was barred by the State statute of limitations; specifically, it directed the district court to determine

"under applicable New York law, whether the relevant 'event' [for purposes of § 50–i] is the break-in and seizures, the state court's order suppressing the items seized, the dismissal of state criminal charges against Fine, or the withholding of his property, which is alleged to have wrongfully continued to this day." 529 F.2d at 77.[1]

■■■ Under New York law, an action for false arrest and imprisonment arises at the time of the plaintiff's actual, physical release from incarceration. *Allee v. City of New York*, 42 A.D.2d 899, 347 N.Y.S.2d 708 (1st Dep't 1973); *Jones v. Town of Johnston*, 342 N.Y.S.2d 927 (3d Dep't 1973); *Caminito v. City of New York*, 45 Misc.2d 241, 256 N.Y.S.2d 670 (Sup.Ct. Kings Co. 1965). It appears that as a matter of New York law the "event" which triggers the commencement of the limitations period is Dr. Adekalu's release from prison on March 24, 1976 and that the complaint was timely filed.

■■■ This result makes sense even if the federal cause of action is regarded as having arisen at the time of the illegal arrest. See *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) (federal law governs time of accrual). Plaintiff has plausibly alleged that the conditions of his successive trials and of his incarceration at Dannemora virtually incapacitated him from bringing this suit until after his release. These allegations are sufficient to preclude dismissal at this time, in view of the possibility that proof of these allegations would establish a basis on which the statute of limitations should be tolled. See *Kaiser v. Cahn*, 510 F.2d 282 (2d Cir. 1974).[2]

1. On remand, the district court denied the defendant's motion for summary judgment on the statute of limitations question, holding only that the claims of continuing trespass accruing more than ninety days prior to the filing of the

notice of claim would be barred. *Fine v. City of New York*, 71 F.R.D. 374 (S.D.N.Y.1976).

2. Although ordinarily tolling periods are borrowed along with limitations periods from appropriate state law, federal law determines

Accordingly, we conclude that Dr. Adekalu's action should not be dismissed for failure to comply with the statute of limitations.

## III.

[6] Defendant argues that the action should be dismissed because plaintiff has not pleaded facts "sufficient to overcome the policemen's defense of good faith." The argument misconstrues the law. A public official or employee sued under 42 U.S.C. § 1983 (and presumably under the Constitution directly) may assert as a defense that he in good faith relied on existing procedures in performing the acts claimed to have violated the plaintiff's constitutional rights. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). An officer's "good faith reliance", however, is ordinarily a question of fact which must be resolved either by undisputed affidavits or at trial. *Scheuer v. Rhodes*, 416 U.S. 232, 250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Defendant argues that the trial judge's denial of the defendant's motion to suppress establishes *as a matter of law* the officers' good faith in conducting that was later found to be an illegal search. It cites no authority to support this argument, and it is one we find to be unpersuasive, particularly where the trial ruling has been unanimously reversed. The cases cited by defendant are wholly inapposite, see, e. g., *Zweibon v. Mitchell*, 170 U.S.App.D.C. 1, 516 F.2d 594, 671 (1975) (holding good faith defense available to federal officers wiretapping without court order in belief that President had inherent constitutional authority to surveil foreign intelligence gathering without a warrant), since this cannot be characterized as a situation in which there was an abrupt change in law which

the officers could not reasonably be expected to predict. Comp. *Altimus v. Manhood Foundation, Inc.*, 425 F.Supp. 1118, 1123 (S.D.N.Y.1976).

## IV.

Instead of suing the individual detectives for deprivation of his civil rights under 42 U.S.C. § 1983, plaintiff sues only the City of New York. The City is not a "person" within the meaning of § 1983 and hence may not be sued for damages or equitable relief under that section. *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In *Bruno*, the Supreme Court remanded to the district court for consideration whether a municipality could be sued for violation of rights secured by the Fourteenth Amendment under the general federal question jurisdictional statute, 28 U.S.C. § 1331, where the jurisdictional amount ($10,000) is in controversy. Plaintiff urges an affirmative answer to the question remanded in *Bruno*. Defendant, however, argues that the Fourteenth Amendment provides no basis for a suit against a municipality and that to find otherwise would be inconsistent with Congressional exclusion of municipalities from liability under § 1983.

The issue is not whether there is subject matter jurisdiction but whether plaintiff has stated a claim for relief. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Section 1331 confers subject matter jurisdiction since plaintiff seeks well over $10,000 in damages from the City and claims a violation of rights arising under the Constitution of the United States. *Perzanowski v. Salvio*, 369 F.Supp. 223, 229 (D.Conn.1974).

---

whether application of the limitations period or tolling provision unduly impinges on the federal interests sought to be protected. *Kaiser v. Cahn, supra.* New York has repealed provisions which tolled all limitations periods while the plaintiff was in prison. N.Y.Civ.Prac. Law & Rules § 208 (as amended, June 11, 1973).

However, there are factual questions which go to the appropriateness of permitting tolling as a matter of federal law which could best be developed at trial. See Dean McLaughlin's Commentary on New York's Change of Law at C208:3 of *McKinney's Consol. Laws of N.Y., Annotated*, Book 7B (supp.).

The weight of authority is that a municipality may be sued directly under § 1331 for violation of constitutional rights secured by the Fourteenth Amendment. *Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976); *Cox v. Stanton*, 529 F.2d 47 (4th Cir. 1975); *Fitzgerald v. Porter Memorial Hospital*, 523 F.2d 716, 718 n.7 (7th Cir. 1975) (Stevens, J.), *cert. denied*, 425 U.S. 916, 96 S.Ct. 1518, 47 L.Ed.2d 768 (1976); *Panzarella v. Boyle*, 406 F.Supp. 787 (D.R.I.1975); *Dahl v. City of Palo Alto*, 372 F.Supp. 647 (N.D.Cal. 1974); *Lombard v. Board of Education*, 407 F.Supp. 1166 (E.D.N.Y.1976); *Snead v. Dep't of Social Services*, 409 F.Supp. 995 (S.D.N.Y.1975). *Contra, Mitchell v. Libby*, 409 F.Supp. 1098 (D.Vt.1976); *Perzanowski v. Salvio, supra*, 369 F.Supp. 223 (D.Conn. 1974).

In *Brault v. Town of Milton*, 527 F.2d 730 (2d Cir. 1975) the Court of Appeals reversed the district court's dismissal of a complaint seeking monetary relief against the Town of Milton for an allegedly illegal taking of property without due process of law guaranteed by the Fourteenth Amendment. Judge Smith found that the reasoning of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) provided "sweeping approbation of constitutionally-based causes of action" and led to the conclusion that the Braults had stated a cause of action on which relief could be granted against the Town. Judge Smith noted that the *Bivens* court had cautioned that "the adjudication of some claims rooted in the Constitution may be precluded by 'special factors counselling hesitation in the absence of affirmative action by Congress,'" and that the Town of Milton argued that § 1983's exclusion of municipalities from liability was such a "special factor." Judge Smith answered this argument as follows:

"If a construction of § 1331 as authorizing such suits would render meaningless the immunity enjoyed by municipalities under § 1983, we might find this argument more persuasive. This is not in fact the case, however, for § 1331, with its amount in controversy requirement, would preserve the municipality's § 1983 immunity as to actions not involving this minimum sum . . . *Bell v. Hood* and *Bivens* itself, moreover, caution against assuming that Congress' exemption for municipalities under § 1983 informed its efforts four years later in establishing federal question jurisdiction. For while Congress placed suits against federal officials beyond the scope of § 1983 with no less—and indeed, probably far more—clarity than it proscribed suits against municipalities, the Court in these two cases confirmed that § 1331 vested federal jurisdiction over civil rights actions against federal officers. We reject the view, therefore, that municipalities enjoy any special status which would immunize them from suits to redress deprivations of federal constitutional rights." 527 F.2d at 734–35.

The panel decision, from which Judge Timbers dissented essentially for reasons urged here by the City defendant, was reversed by the *en banc* court on the grounds that the complaint failed to state a claim for relief because it did not plead malice in the Town's actions. 527 F.2d 736, at 739–40. The issue whether municipalities may be sued for damages under § 1331 and the Fourteenth Amendment is accordingly still open in this Circuit. *Fine v. City of New York, supra*, 529 F.2d 70, 75–77 (2d Cir. 1975); *Monell v. Department of Social Services of City of New York*, 532 F.2d 259, 260 n. 1 (2d Cir. 1976).

The issue is one which has been thoroughly ventilated in the district courts and must ultimately be resolved by the Supreme Court. There is thus little to be gained from yet another detailed exposition of the arguments *pro* and *con*. We find Judge Smith's reasoning in *Brault* to be persuasive. Nothing in the Constitution or jurisdictional statutes of the United States protects a municipality absolutely from suit for violations of Constitutional rights where the jurisdictional requirements of § 1331 are met. One who is actually injured by unconstitutional municipal action is entitled to redress of his injuries, and damages are

the traditional method by which our legal system provides compensation to victims. Defendant's argument that the "power of enforcement conferred upon Congress by Section 5 [of the Fourteenth Amendment] is plenary and vests no residual power [to imply remedies or causes of action] in the judicial branch" is unpersuasive. The enforcement power of Congress is not by its terms exclusive, nor should it be so regarded by the federal courts, the branch of our government traditionally responsible for assuring the vitality of Constitutional provisions. Accordingly we conclude that under some circumstances a cause of action for monetary relief against a municipality under § 1331 may be stated.

The City argues alternatively that "vicarious liability" for the acts of its agents should not, as a matter of federal law, be imposed on a municipality.[3] It suggests that while suit against a City for damages arising out of an unconstitutional taking of property effected by the City in its own name may be appropriate, suit predicated solely on the acts of individual police officers is not. Plaintiff here alleges only that three New York City detectives made an unconstitutional arrest. The City urges, therefore, that plaintiff has in any event failed to state a claim for relief against the City.

The weakness in the City's argument is that *all* municipal actions are performed for the municipality by its human agents. Thus, in the instant case the alleged unconstitutionality of the officers' actions arises from the fact that they were employed by and acting for the City, under color of law. All municipal liability is, in a sense, "vicarious," and thus the concept of "vicariousness" alone—to the extent that it refers merely to whether the municipality acted in its own name or not—is not useful in determining the elements of a cause of action under the Fourteenth Amendment against the City.

On the other hand, several considerations suggest that it is appropriate to explore further whether the elements of a constitutional cause of action against a municipality may differ from those which must be pleaded in a suit under § 1983 against individual officers. Where damage awards would be made directly out of municipal treasuries—regardless of local statutory authorization for the expenditure of taxpayer monies[4]—a court should be cautious in deciding when the municipality *qua* municipality can reasonably be held liable as a matter of federal law for injuries resulting from the unconstitutional actions of its agents. Persons injured by illegal actions of municipal agents are not wholly without any federal remedy, as were plaintiffs in *Bivens* prior to that decision; they may sue the individual agents without regard to the amount of damages sustained under § 1983. Thus, in many instances suits against municipalities directly will be unnecessary to secure compensation to victims or to deter future illegal actions. Finally, although municipalities enjoy no Eleventh Amendment protection from suit, interests of comity and federalism suggest that municipal treasuries—frequently funded in part from State treasuries—should be protected from federally imposed liabilities absent a strong showing warranting imposition of liability on the municipality itself.[5] Cf. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Weighing these considerations, we conclude that municipalities should not necessarily be liable whenever a plaintiff may have a good cause of action against its

---

3. Under state law New York City may be sued directly for certain torts of its agents, and must indemnify its police officers who are successfully sued in federal court. See Gen'l Mun.Law §§ 50–a; 50–b; 50–k. Its liability to suit in state courts or indemnification obligations imposed by state law are irrelevant to the question whether a federal cause of action is stated against a municipality, however.

4. See note 3, *supra*.

5. It is an ironic anomaly that state treasuries—generally in stronger condition than municipal fiscs—are protected by the Eleventh Amendment while municipal treasuries are not.

individual officers under § 1983. Further indicia of municipal responsibility other than the employer/employee relationship must be alleged in order to state a cause of action against the municipality. See *Brault v. Town of Milton, supra*, 527 F.2d at 739–40 (*en banc* opinion). For example, a claim for damages based on enforcement of an allegedly unconstitutional municipal statute would clearly implicate the municipality; if the municipality seeks to condemn property it has also acted in a sufficiently municipal character to warrant imposition of liability on its treasury. Similarly, a pattern or practice of unconstitutional activity resulting in injury to plaintiff would give rise to a cause of action against the municipality itself. Such a pattern or practice may fairly be found to result from policies or actions of persons holding such high municipal office that they can reasonably be held to reflect municipal policy. Moreover, it may not be unreasonable to impose liability on treasuries funded by taxpayer monies where high elected or appointed officials, chosen directly or indirectly by the people, engage in unconstitutional actions. Furthermore, in many cases involving claims of illegal policies or practices, "the responsibility for the wrong is diffused throughout various parts of the government rather than attributable to the particular individual who operates most directly upon the victim." Note, *Damage Remedies Against Municipalities for Unconstitutional Actions,* 89 Harv.L.Rev. 922 at 957 (1976). Permitting suit against a municipality where a pattern, practice or policy of unconstitutional conduct is alleged will frequently be the only practicable way of vindicating an injured victim's rights.

■ This conclusion accords with the principles for imposition of monetary liability enunciated in cases brought under § 1983. ". . . [W]hen monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 962, 38 L.Ed.2d 324 (1973); *Wright v.*

*McMann,* 460 F.2d 126, 134–35 (2d Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972). Similarly, a showing of actual municipal responsibility for illegal acts should be required. Congress, not seeking to impose any liability on municipalities or vicarious liability on its agents under § 1983, is unlikely to have intended that purely "vicarious" liability would be imposed upon municipalities as a matter of federal law in suits brought under the Fourteenth Amendment and § 1331.

We are aware that other courts, and scholars, have reached other conclusions. For example, the authors of the Harvard Note cited above take the position that a municipality should be vicariously liable for all constitutional torts of its employees (except where the damage award would be so great as to cripple the municipality) even when the individual officers would be immune from liability by virtue of their good faith reliance on existing procedures. Although such a policy would serve compensation interests more fully than would the rule set forth above, we cannot agree that municipal "deep pockets", now increasingly shallow, should be lightly tapped to secure compensation for unconstitutional acts committed by its employees but not taken pursuant to a municipal policy.

■ Plaintiff has alleged no pattern, practice or policy of unconstitutional municipal conduct; he claims only that three New York City detectives made an unconstitutional search. Accordingly, his federal claims must be dismissed for failure to state a claim upon which relief can be granted against the municipality.

V.

■ Plaintiff's *pro se* pleadings have been examined with care. There appears to be diversity jurisdiction in this court over any state law claims plaintiff may have since he is a citizen of Nigeria suing a New York corporation for damages in excess of $10,000. *Moor v. County of Alameda, supra,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1974). Under State law, municipalities may be sued directly for person-

al injuries resulting from the tortious conduct of its employees. N.Y.Gen'l Mun.Law §§ 50–j(3), 50–k. Although plaintiff's suit appears to be within the State statute of limitations, plaintiff has not complied with the State law requirement that a notice of claim against the City be filed within ninety days of his release from prison as a condition to bringing the suit. N.Y.Gen'l Mun.Law § 50–e(1); *Allee v. City of New York, supra,* 42 A.D.2d 899, 347 N.Y.S.2d 708. However, applicable State law permits a late notice of claim to be filed within the limitations period (which does not expire until June 24, 1977) with the permission of the court.

Accordingly, plaintiff is granted twenty days within which to move to amend his complaint affirmatively to allege diversity jurisdiction over any State law claims he may have and to move for permission to file a late notice of claim.[6]

In the event that plaintiff fails to take the action specified above, the case will be dismissed.

It is so ordered.

---

6. No view is expressed or implied concerning the merits of any state law claim plaintiff may wish to assert.