Robert L. SANDS

v.

UNION COUNTY, TENNESSEE, Maynardville, Tennessee, Paul Hill, Sheriff, Johnny Lay, Deputy Charlie Gross, Deputy Tommie Cook, City Policeman Bill Pressley, Detective, Three Unknown Deputies.

Civ. No. 3–77–439.

United States District Court, E. D. Tennessee, N. D.

May 23, 1978.

Robert L. Sands, pro se.

Dean Hill Rivkin, U. T. Legal Aid, Knoxville, Tenn., for plaintiff.

Ben W. Williamson, Jr., Knoxville, Tenn., Charles R. Moore, Maynardville, Tenn., George D. Montgomery, Ellis A. Sharp, Knoxville, Tenn., for defendants.

9. The court will reserve ruling at this time on the application by plaintiffs' counsel for attorney fees.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff has filed a motion to amend his complaint so as to state a cause of action against Union County and the City of Maynardville directly under the Fourteenth Amendment and to add a request for attorney's fees under 42 U.S.C. § 1988. Even though these amendments come after a response has been served, Rule 15(a), Fed.R. Civ.P., states that leave of the Court "shall be freely given when justice so requires." The Court notes that the original complaint was drafted by the the plaintiff acting as his own counsel, and this amendment is offered by his appointed counsel. In light of these circumstances, the motion to amend must be granted.

However, this does not end the matter. The Court, after reading the response of defendant Union County to the motion to amend, is convinced that the response is not made to the attempt to amend, but, instead, contains substantive attacks on the merits of the claims made in the amendment. Therefore, the Court will construe the response as a motion attacking the substantive claims made in the amendment, both on jurisdictional grounds and upon the ground that the claims fail to state a claim upon which relief can be granted.[1] Of course, the first issue which the Court must determine, even without a motion on the defendant's part, is whether subject matter jurisdiction is available over the claims added against the municipal defendants.

### Section 1331 Jurisdiction

Recently the Supreme Court was faced with the question of whether municipal defendants, although not "persons" for purposes of Section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), may be sued directly under the Fourteenth Amendment for alleged constitutional violations invoking the general federal question jurisdictional statute, 28 U.S.C. § 1331(a). Justice Rehnquist, writing for a unanimous Court, left the question open:

"We . . . assume, *without deciding,* that the respondent could sue directly under § 1331 without regard to the limitations imposed by 42 U.S.C. § 1983." (emphasis added) *Mt. Healthy Board of Ed. v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

Despite the reluctance of the Supreme Court to settle this important issue, the Sixth Circuit Court of Appeals was one of the first circuit courts to permit federal question jurisdiction over municipal defendants in civil rights cases. These circuit court opinions were based on the landmark decision of *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), wherein the Supreme Court implied a cause of action and a damage remedy against federal agents based on the Fourth Amendment's proscription on unreasonable searches by officials of the federal government. Following the *Bivens* rationale, the Sixth Circuit, in *Hanna v. Drobnick,* 514 F.2d 393 (1975), stated that the plaintiffs had stated "a cause of action of which the District Court had subject matter jurisdiction under § 1331, provided the sum of $10,000 is in controversy." *Id.* at 398. *Hanna* involved alleged violations of the Fourth Amendment as made applicable to the States via the Fourteenth Amendment. Thus, it could be argued that because the Fourth Amendment was at issue, *Hanna* did not stand for direct liability based on non-Fourth Amendment violations.

In 1976, the Sixth Circuit held that a cause of action had been stated against a municipal defendant for an alleged direct violation of the Fourteenth Amendment, i. e., deprivation of property without due process of law. *Amen v. City of Dearborn,* 532 F.2d 554 (1976). But because of the lack of a clear finding on the jurisdictional amount, the case was remanded. Yet, this opinion was based upon a suit brought directly under the Due Process Clause of the Fourteenth Amendment.

---

1. The Court notes that both municipal defendants were previously dismissed, upon their own motions, because they were not "persons" liable under Section 1983. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Finally, in 1977 the Sixth Circuit held that federal question jurisdiction would lie in an action against the City of Memphis for alleged violations of the Fourth, Sixth, Eighth, Thirteenth and Fourteenth Amendments resulting in the death of the plaintiff's sixteen-year-old son. *Wiley v. Memphis Police Dept.,* 548 F.2d 1247 (1977). After noting that jurisdiction over the municipal defendants was improperly rejected by the district court, the Court decided the merits of the claim against the plaintiff.

These three Sixth Circuit cases, *Hanna, Amen,* and *Wiley,* clearly uphold Section 1331 jurisdiction over constitutional claims against municipal defendants, when the amount in controversy exceeds $10,000.00. This jurisdictional holding has been approved by other circuits: *Gentile v. Wallen,* 562 F.2d 193 (2d Cir. 1977); *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975); *Fitzgerald v. Porter Memorial Hospital,* 523 F.2d 716 (7th Cir. 1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1518, 47 L.Ed.2d 768 (1976); *Gray v. Union County Intermediate Education District,* 520 F.2d 803 (9th Cir. 1975); *Roane v. Callisburg Independent School District,* 511 F.2d 633 (5th Cir. 1975). The Third Circuit, in a recent case, chose to avoid the question. *Gagliardi v. Flint,* 564 F.2d 112 (3d Cir. 1977).

Based on these cases, the Court is constrained to hold that it has subject matter jurisdiction over civil rights actions brought against municipal defendants directly under the Fourteenth Amendment, when the amount in controversy exceeds $10,000.00. 28 U.S.C. § 1331(a).

### Theory of Liability

Having found that these claims are within the jurisdiction of the Court, we must now determine whether the allegations of fact and the theory of liability proposed by the plaintiff are sufficient to state a claim upon which relief could be granted. In his amendment, the plaintiff sets forth a theory of liability analogous to the vicarious liability imposed on employers in the law of torts, often termed *"respondeat superior."* See Prosser, The Law of Torts § 69 (4th ed. 1971). The amendment states that the municipal defendants "are liable for the unconstitutionally tortious conduct of [their] duly employed police officers. . . ." This theory of vicarious liability for municipalities has been espoused by scholars. In addition, it has been urged by some commentators that municipal employers should be *strictly liable* for the unconstitutional acts of their employees, *i. e.,* even when those employees would be able to defeat personal liability by establishing the good faith, reasonableness defense applicable to individual defendants, such as was applied in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). *See Note, Damages Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922 (1976).[2]

In deciding whether vicarious liability, strict liability, or some other theory of liability should apply to municipal defendants, we are confronted with an issue of law which is unsettled and involves important policy considerations. One problem in analysis of this issue arises due to the lack of discussion in many of the opinions as to what theory of liability the court would apply, having found jurisdiction. However, the Court has found several district court decisions and one circuit court opinion that refuse to apply a theory of *respondeat superior* liability to municipal defendants. *See McDonald v. State of Illinois,* 557 F.2d 596 (7th Cir. 1977); *Adekalu v. New York City,* 431 F.Supp. 812 (S.D.N.Y.1977); *Gresham v. City of Chicago,* 405 F.Supp. 410 (N.D.Ill. 1975).

In *McDonald, supra,* Chief Judge Fairchild distinguished a previous Seventh Circuit opinion, in which liability was imposed upon a municipal defendant, from the attempt to hold Cook County, the City of Chicago, and the Cook County Department of Corrections liable under a theory of *re-*

2. Municipalities would be allowed a defense, under the author's proposal, only when "the burden of liability would be so great as to disrupt the functioning of local government. . . ." 89 Harv.L.Rev. 922, 958 (1976).

*spondeat superior* for the acts of their employees. The Court noted that in *Hostrop v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569 (7th Cir. 1975), the municipal defendant, a public board of education, was held liable for action which "the governing board of the entity [had] itself taken . . . . Thus the responsibility of the entity arose directly out of the action of its governing board." *Id.* at 604. Judge Fairchild then commented that while

> "[i]t might well not be an unreasonable extension of *Hostrop* to hold a similar governmental entity liable for the deprivation of a constitutional right perpetrated by an inferior employee when his act was *required by a policy adopted* by the governing board . . . there is no allegation that any policy of [the municipal defendants] *required* [these employees to take the alleged unconstitutional acts]." (emphasis added) *Id.* at 604.

In support of this holding, the Court cited the lack of any precedent in the federal case law, the refusal of courts to apply *respondeat superior* liability in Section 1983 actions, and the lack of a showing that *respondeat superior* liability "is an appropriate and necessary prophylactic against constitutionally improper acts of [municipal] agents." *Id.* at 604. The Seventh Circuit reaffirmed this holding in *Jamison v. McCurrie,* 565 F.2d 483 (7th Cir. 1977).

In *Adekalu v. New York City, supra,* Judge Lasker, pointing to the analogous Section 1983 holdings, held that where a plaintiff "has alleged no pattern, practice or policy of unconstitutional municipal conduct . . . his federal claims must be dismissed for failure to state a claim upon which relief can be granted." 431 F.Supp. 812, 820. Judge Lasker discussed some of the circumstances under which it might be proper to allege "actual municipal responsibility," all of which require "further indicia of municipal responsibility other than the employer/employee relationship." *Id.* at 820.

In addition to the specific discussion of *respondeat superior* liability found in the above cases, a study of the three Sixth Circuit cases leads the Court to believe that this Circuit has not and would not approve such a theory of municipal liability were it faced with the issue directly.

The actions complained of in *Hanna v. Drobnick, supra,* were actions mandated by a city inspection ordinance, not discretionary acts taken by lower-level employees. *Amen v. City of Dearborn, supra,* involved the acquisition of plaintiffs' property by the City as part of an urban renewal project, based on formal acts taken by the City's governing boards.

Finally, in *Wiley v. Memphis Police Dept., supra,* we encounter circumstances similar to those alleged here. In addition to the police officers who did the shooting that resulted in her son's death, plaintiff sought to hold the City of Memphis and its Police Department, as well as certain city officials, liable for the death of her son. The plaintiff's theory of liability was not that of *respondeat superior* based on the employer-employee relationship, but, rather, that the City and the Police Department had instituted policies about the use of deadly force which were unconstitutional and that these officers were merely carrying out these unconstitutional policies at the time of the shooting. This theory was based on an alleged policy of the City and its police department, like that mentioned in *McDonald, supra* and was not dependent merely on the employer-employee relationship. In fact, plaintiff sought to prove that the training program and policies of the police department *required* the alleged unconstitutional acts taken by the officers. *Id.* at 1250. It appears, from the reading of these three Sixth Circuit cases, that, at least implicitly, more than a theory of *respondeat superior* is needed in this circuit to state a claim upon which relief can be granted against a municipal defendant under Section 1331(a).

Also of some guidance on this issue are the decisions relating to a superior's liability for his subordinate's allegedly unconstitutional acts when both are sued under Section 1983. In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the

Supreme Court noted a fatal weakness in the district court's finding that certain superior city officials, including the Mayor, had violated the plaintiffs' constitutional rights:

"The findings of fact made by the District Court at the conclusion of these two parallel trials . . . disclose a central paradox which permeates the court's legal conclusions. . . . As the facts developed, there was no *affirmative link* between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their *authorization or approval of such misconduct.*" (emphasis added) *Id.* at 371, 96 S.Ct. at 604.

Later in the opinion, the Court addressed the argument that even without a showing of "direct responsibility" for the unconstitutional actions, the supervisory officials were liable for their failure to exercise an affirmative "duty" to eliminate future police misconduct. In distinguishing the facts in *Goode* from earlier desegregation cases, the Court noted that in the desegregation cases the segregation "imposed by law had been implemented by [the defendants] for varying periods of time," whereas in the *Goode* case the defendants had "played no affirmative part in depriving any [of the plaintiffs] of any constitutional rights." *Id.* at 377, 96 S.Ct. at 607. The Court emphasized that in the desegregation cases the superior officers against whom injunctive relief was granted were:

"not administrators and school board members who had in their employ a small number of individuals, which [individuals] on their own deprived black students of their constitutional rights . . . . They were administrators and school board members who were found by their *own* conduct in the administration of the school system to have denied those rights." *Id.* at 377, 96 S.Ct. at 607.

The requirement, in *Goode*, of an "affirmative link" between the acts of the employees and their superiors would apply just as well to municipal defendants in Sec-

tion 1331 cases. This affirmative link has been applied in a Section 1331 action against superior officers to require that the "superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations." *Kite v. Kelley,* 546 F.2d 334, 337 (10th Cir. 1976).

Additional reasons that support the refusal to hold municipal defendants liable under a theory of *respondeat superior* go to underlying policy grounds. Dean Prosser notes that two of the rationales for applying *respondeat superior* liability are the search for a "deep pocket" and the fact that businesses are run for profit and should bear the risk. Prosser, *Law of Torts* § 69, at 459 (4th ed. 1971). Municipalities, however, are not run for profit, and generally have only a "shallow pocket," if any pocket at all. Also, municipalities have the capability to employ an attorney to give advice on the legality of their policies, plans, and other formal actions. (Many do this now). Thus, responsibility for formal actions or policies which later were held unconstitutional could be minimized if a municipality would seek and follow competent legal advice.

█ The Court is convinced that plaintiff's theory of vicarious liability on the part of Union County, *i. e.,* that the County is liable for the alleged unconstitutional acts of its employees merely because of the employee-employer relationship, is an unacceptable theory upon which to base municipal liability for constitutional violations. Without determining the parameters of a proper theory of municipal liability or whether a municipal defendant can raise defenses similar to those applied to individual defendants, the Court holds that plaintiff's theory of liability against the County fails to state a claim upon which relief can be granted.

### Section 1988 Amendment

As to the amendment requesting attorney's fees under Section 1988, defendant maintains that attorney's fees may be granted to the prevailing party only when the civil rights action is brought by or on

behalf of the United States, and since this case does not comply with that definition, the amendment offering a prayer under Section 1988 should be dismissed. Defendant Union County cites *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), in support of its position.

Section 1988 of Title 42 of the U.S. Code was amended in 1976 so as to specifically authorize the courts, in their discretion, to allow a reasonable attorney's fee as part of the prevailing party's costs. In pertinent part, the 1976 Amendment reads as follows:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . *or* in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (emphasis added). 42 U.S.C. § 1988.

It is clear that the disjunctive "or" means that in the instant case, which is an "action or proceeding to enforce a provision of [section] . . . 1983 . . . of this title," the Court may, in its discretion, allow an attorney's fee to the prevailing party.

Furthermore, in regard to *Runyon v. McCrary, supra*, which defendant Union County argues supports its position, a careful reading of that case reveals otherwise. The *McCrary* opinion was rendered on June 25, 1976. In the portion of the opinion dealing with attorneys' fees, it is clear that the Supreme Court was interpreting Section 1988 prior to the 1976 Amendment. The 1976 Amendment to Section 1988 did not pass both Houses of Congress until October 1, 1976, over three months after the *McCrary* decision. The amendment was passed to remedy the problems discussed in *McCrary* by giving a statutory authorization to courts to award attorneys' fees. *See* [1976] U.S.Code Cong. & Admin.News, p. 5908 *et seq.* However, the Court notes that although the request for attorney's fees al-lowed in the amendment is a proper one, the awarding of such fees is discretionary and the Court does not indicate by this holding whether it will exercise such discretion if plaintiff should prevail on the merits.

### Conclusion

For the foregoing reasons, the plaintiff's motion to amend his complaint is granted. However, it is ORDERED that the motion to dismiss filed by Union County be, and the same hereby is, granted for failure of the amended complaint to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

Order Accordingly.