**Russell W. HANNA et al., Plaintiffs-Appellants,**

v.

**Robert DROBNICK, Building Commissioner, et al., Defendants-Appellees.**

No. 74–1948.

United States Court of Appeals, Sixth Circuit.

April 23, 1975.

Ovid C. Lewis, University Heights, Ohio, William Fadel, Cleveland, Ohio, for plaintiffs-appellants.

Robert M. Debevec, Director of Law, City of Euclid, Euclid, Ohio, Henry B. Fischer, Asst. Dir. of Law City of Euclid, Euclid, Ohio, for defendants-appellees.

Before EDWARDS, PECK and EN-GEL, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from a District Judge's order dismissing a class action claiming damages against the City of Euclid, Ohio, and a number of its employees for alleged unconstitutional searches of homes under a building inspection ordinance. The building inspection ordinance required anyone in the

City of Euclid who desired to sell a house to apply for and secure a certificate from the Building Department. The ordinance allowed building inspectors to make an inspection of any home which they were thus notified was due to be sold. No provision was made for a search warrant in the event of refusal, and the ordinance contained a penalty clause which provided:

> 17115.10. **Penalty.** Whoever violates any provision of this Code or any rule or regulation promulgated thereunder or fails to comply therewith or with any written notice or written order issued thereunder, or whoever interferes with, obstructs, or hinders the Commissioner of Buildings, other city department heads or their representatives while attempting to make an inspection pursuant to this Code, shall be punished by a fine of any sum not to exceed One Thousand Dollars ($1,000.00) and six (6) months imprisonment for each offense.⁹ Each day such violation occurs or continues shall constitute a separate offense.

The pleadings and affidavits make clear that plaintiffs applied for, paid the fee for, and allowed the inspections concerned, but claim they did so "under duress." They now seek actual damages of $500 each and punitive damages of $9,500 to $10,000. Plaintiffs do not seek equitable relief since the Ohio courts have held the penalty section of the ordinance to be invalid and Euclid has amended it to provide for search warrants.

This action is brought against three sets of defendants: 1) seven housing inspectors of the City of Euclid, 2) Euclid's Building Commissioner and the Assistant Building Commissioner, and 3) the City of Euclid itself. Plaintiffs assert that the Federal District Court has jurisdiction of the case against the named individual defendants under 28 U.S.C. § 1343 (1970), and against the city itself under 28 U.S.C. § 1331 (1970).

On the filing of motions for summary judgment and accompanying affidavits by both plaintiffs and defendants, the District Judge found as uncontroverted facts the following:

1. Euclid Ordinance No. 127–1970 became effective on June 16, 1970;

2. Each and every inspection challenged herein was conducted pursuant to application and/or request of the homeowner or agent thereof, * * *

3. Section 17115.01 of [the Euclid city ordinance] was declared in conflict with the Fourth and Fourteenth Amendments to the United States Constitution on June 11, 1973, by the Common Pleas Court of Cuyahoga County in Hanna v. City of Euclid, Case No. 908, 928;

4. Structures and premises designated by the ordinance were inspected pursuant to the ordinance by duly authorized personnel of the city during the effective existence of the ordinance;

5. No inspections under authority of the ordinance were conducted subsequent to the judicial pronouncement of unconstitutionality;

6. The "forceable entry" charged by plaintiffs was induced by the claimed threat of criminal penalty imposed by the ordinance;

7. Inspections, as heretofore enumerated, consisted of testing water faucets, examining lighting fixtures and internal wiring, measuring certain rooms and areas, etc.;

8. Plaintiffs' pleadings and affidavits are significantly silent as to any acts of physical or verbal abuse practiced by any city employee. On the contrary, Defendants' Motion Exhibit B, a letter from plaintiff Russell Hanna to housing inspectors Kalan and Morlock states the following:

> In reference to our conversation on Monday, October 8, 1971, I hereby confirm the statements made by me at that time.
>
> First of all, we now have *no* intentions of selling our home. We have decided to make corrective im-

provements at our 1840 E. 223 Street residence. And should we, in the future, decided to sell . . . the Division of Housing will be contacted *prior to* listing our home with any Real Estate Agency. If I had been aware of this new housing inspection ordinance, I would have made arrangements this time in advance of attempting to sell our home. ·

Secondly, per my conversation with Mr. Kalan, we shall comply with all of the violations. A couple of corrective steps have already been taken, more will be taken when the weather permits and the rest will be accomplished this spring and summer when I can get the necessary help. I hope to have everything done by the end of June . . or at least well under progress.

Thank you for the "tips" you gave me and should I need further help or advice I won't hesitate in calling you.

The District Judge's opinion also said:

It is significant to note at this point the absence of a single factual assertion (as opposed to conclusory allegation) in the pleadings or affidavits that any of the defendants acted in bad faith or outside the scope of authority conferred by the pertinent sections of the ordinance.

The fundamental underpinning of plaintiffs' case, of course, is Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). There the Supreme Court held unconstitutional a criminal conviction for a householder's refusing to allow the inspection of his home without procurement of a search warrant.

Appellees in this case earnestly urge us to distinguish *Camara* because the ordinance under which the defendants act in this instance was applicable to permits for the sale of homes and represented a consumer protection device. Appellees rely upon United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87

(1972), and Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971).

In fact, no attack upon the present housing inspection ordinance is before us. We note, however, that the City of Euclid, in direct response to the opinion of an Ohio Court of Common Pleas dated June 11, 1973, (declaring the penalty section of the Euclid ordinance unconstitutional) reenacted its present penalty section by adding a provision which reads: "if the owner . . . refuses entrance to the . . . inspector. . ., no such entrance . . . shall be made unless a search warrant is properly obtained . . .."

This language seems to be drawn from the text of the *Camara* opinion, where Justice White, after noting certain emergency exceptions to the search warrant rule, said:

On the other hand, in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day. Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Similarly, the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect.

Camara v. Municipal Court, *supra* 387 U.S. at 539–40, 87 S.Ct. at 1736.

This language which describes what the Supreme Court (with apparent approval) called "the prevailing local policy, in most situations" actually portrays what happened in our instant case. This record presents no instance of a householder's refusal of inspection—no instance of forcible entry, and no instance of arrest or prosecution.

On the contrary, the record shows that every inspection detailed by plaintiffs' affidavits was occasioned by the householder's application and reflects no instance of refusal of entry or demand for production of a search warrant.

In fact, the closest that plaintiffs come to alleging any Fourth Amendment violation is a claim of duress resulting from the possible invocation of the penalty clause if they refused admittance to the inspectors.

It is against this factual background then that we consider the District Court's jurisdiction over the three sets of defendants and their claimed defenses and immunities.

## THE SEVEN BUILDING INSPECTORS

■ The seven building inspectors represent the easiest group of defendants to deal with under the facts of this case. Plainly, the inspectors are "persons" within the meaning of 42 U.S.C. § 1983 (1970), and the District Court had jurisdiction over plaintiffs' complaint and claim for money damages against them. 28 U.S.C. § 1343(3) (1970); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

In the *Scheuer* case Chief Justice Burger, discussing Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), said:

> The Court noted that the "common law has never granted police officers an absolute and unqualified immunity," . . . [Pierson v. Ray, 386 U.S. 547 (1967)] at 555 [87 S.Ct. 1213, 18 L.Ed.2d 288], but that "the prevailing view in this country [is that] a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved," *ibid.;* the Court went on to observe that a "policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages

> if he does." *Ibid.* The Court then held:

>> "that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." Id. [386 U.S.], at 557 [87 S.Ct. 1213].

> When a court evaluates police conduct relating to an arrest its guideline is "good faith and probable cause." *Ibid.*

Scheuer v. Rhodes, *supra* 416 U.S. at 245–46, 94 S.Ct. at 1691.

■ While police officers' actions represent a problem separate from (and more complex than) those normally posed by building inspectors, we think that both are entitled to the defenses of good faith purpose and reasonable grounds for their actions. Pierson v. Ray, *supra;* Wood v. Strickland, —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Here there are no facts which show any lack of either on the part of these building inspectors. The inspections they made were applied for by the homeowners concerned. In addition their actions at the time were presumptively valid under a city ordinance which they had no part in adopting and which had not been declared unconstitutional. Under the circumstances of this case, we perceive no duty on the part of the building inspectors to defy their city's ordinance and their supervisors' instructions by asserting the invalidity of the penalty clause of the ordinance which had not yet been attacked. And particularly is this true since their inspection visits met with no refusal of admittance and they were never required to initiate arrests or criminal complaints.

As to the building inspectors, the District Judge was correct in granting defendants' motion for summary judgment upon the ground that there were no facts shown upon which relief could be afforded. This record does not allow a finding of bad faith or lack of reasonable grounds for the actions taken.

## THE BUILDING COMMISSIONER AND HIS ASSISTANT

■ Essentially the same analysis of facts leads to affirmance of summary judgment in favor of the Building Commissioner and his assistant. It is, of course, obvious that their governmental responsibilities placed them at a somewhat different level in the scale of qualified immunities than that of the inspectors. Scheuer v. Rhodes, *supra* 416 U.S. at 245–46, 94 S.Ct. 1683; Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). But the complaint alleges no additional facts pertaining to the Commissioner and his assistant except that they directed that the inspections now complained of be made.

In Scheuer v. Rhodes, after quoting from Barr v. Matteo, *supra,* Chief Justice Burger continued:

These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

Scheuer v. Rhodes, *supra* 416 U.S. at 247–48, 94 S.Ct. at 1692.

Here, as the District Judge found in effect, there were "reasonable grounds" for the direction to inspect in the applications for the inspection, and in the lack of any refusal of admission. And we find no facts to dispute the Building Commissioner's and his assistant's good faith under the instant facts. The subtleties of plaintiffs' legal argument to the effect that they were coerced not by forcible entry or arrest, but by the coercion of the penalty clause does not seem to us (as it obviously did not to the District Judge) to require a finding of "bad faith" on the part of these two officials.

## THE CITY OF EUCLID

Plaintiffs-appellants' counsel conceded that under City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), no damages under 42 U.S.C. § 1983 (1970) could be assessed against the City of Euclid. Appellants, however, claim that even though they may have no cause of action under § 1983, they do have a cause of action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). They claim the District Court has jurisdiction under 28 U.S.C. § 1331 (1970) because of their allegation of over $10,000 (the jurisdictional amount provided in § 1331) when their punitive damage claims are added to their actual damage claims.

We agree with appellants that the *Bivens* case does create a cause of action of which the District Court had subject matter jurisdiction under § 1331, provided the sum of $10,000 is in controversy. *See* Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); City of Kenosha v. Bruno, *supra* 412 U.S. at 514, 516, 93 S.Ct. 2222.

We also agree with appellants that punitive damage claims may be looked to in order to reach the jurisdictional amount of damages of $10,000. Wood v. Stark Tri-County Building Trades Council, 473 F.2d 272 (6th Cir. 1973), and cases cited therein.

■ Nonetheless, we feel that affirmance of the District Court judgment dismissing the cause of action against the defendant City of Euclid is likewise called for on this record. Punitive damages (the primary damages relied upon to meet the jurisdictional damage amount) can only be assessed on a complaint which alleges and facts which show willful and malicious behavior. This is true both in federal law—Lake Shore & M. S. Ry. Co. v. Prentice, 147 U.S. 101, 107, 13 S.Ct. 261, 37 L.Ed. 97 (1893); Scott v. Donald, 165 U.S. 58, 86—

89, 17 S.Ct. 265, 41 L.Ed. 632 (1897); In re Marine Sulphur Queen, 460 F.2d 89, 105 (2d Cir.), cert. denied sub nom. United States Fire Ins. Co. v. Marine Sulphur Transport Co., 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972)—and under the law of the State of Ohio if we look to it for guidance—Bush v. Kelly's, Inc., 18 Ohio St.2d 89, 93, 247 N.E.2d 745 (1969); Smithhisler v. Dutter, 157 Ohio St. 454, 105 N.E.2d 868 (1952); Saberton v. Greenwald, 146 Ohio St. 414, 66 N.E.2d 224 (1946).

We recognize that plaintiffs' complaint alleged malice as a conclusion, but under the analysis of the facts set forth above, the District Judge found neither willfulness nor bad faith, let alone malice. Nor do we.

Under these circumstances, we find no need to determine in this case whether or not we should look to Ohio's case law granting its municipalities immunity from suit. *See, e. g.,* Eversole v. City of Columbus, 169 Ohio St. 205, 158 N.E.2d 515 (1959); Aldrich v. City of Youngstown, 106 Ohio St. 342, 140 N.E. 164 (1922).

The judgment of the District Court is affirmed as to all defendants.