**Donald L. CALE, Appellant,**

v.

**The CITY OF COVINGTON, Virginia, Appellee.**

**No. 77–1239.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 13, 1977.

Decided Nov. 3, 1978.

William A. Parks, Jr., Hot Springs, Va. (Erwin S. Solomon, Erwin S. Solomon & Associates, Hot Springs, Va., on brief), for appellant.

Joseph A. Matthews, Jr., and T. T. Lawson, Roanoke, Va. (William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

On November 30, 1973, Donald L. Cale was discharged from his duties as a police officer for the City of Covington, Virginia. Chief of Police Donald Leet dismissed Cale for taking, while he was on duty, a plastic scalpel from the office of a deceased physician. Cale then brought this wrongful discharge action in the district court, only against the City of Covington, resting jurisdiction upon the existence of a federal question and an amount in controversy exceeding $10,000. The cause of action was alleged to have arisen under the Fifth and Fourteenth Amendments to the Constitution. The complaint also included State law claims, the dismissal of which is not here contested. He demanded damages of $50,000.

In its answer, the City pleaded that Cale's complaint failed to state a cause of action, and, following discovery, moved for summary judgment. Considering Cale's "complaint as a suit for monetary relief under 42 U.S.C. § 1983," the district court granted the City's motion on the "well settled principle of law that a municipality is not a 'person' within the meaning of § 1983 and therefore is not amenable to suit for monetary relief under these statutes," citing *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

The first of three questions for review is whether the district court erred in deciding that 42 U.S.C. § 1983 provided Cale no remedy. While the decision of the district court was correct at the time of its decision, e. g., *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the law has since changed. The Supreme Court in the recent decision of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled the absolute immunity of municipalities from suits under § 1983 which had been established in *Monroe.* As we should apply the law as it exists at the time of our decision, *Cort v. Ash,* 422 U.S. 66, 76, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), we vacate the decision of the district court dismissing Cale's case as a suit under § 1983 and remand for further proceedings consistent with *Monell.* We add only that the liability of the City of Covington under § 1983 may depend upon factual issues not developed in the current state of the record, for *Monell* makes it clear that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," 436 U.S. at 691, 98 S.Ct. at 2036, and that only a local government which "under color of some official policy 'causes' an employee to violate another's constitutional rights" may be liable. 436 U.S. at 692, 98 S.Ct. at 2036.

The next question is whether the amount in controversy was sufficient to in-

voke the district court's subject matter jurisdiction under 28 U.S.C. § 1331. The City disputes Cale's claim of $50,000 in damages, and argues that because Cale was later able to secure subsequent employment with about the same salary or wages, his damages were in fact less than the $10,000 jurisdictional amount required under § 1331. To agree with the City, however, we must determine "to a legal certainty that the claim is really for less than the jurisdictional amount . . .," *Mt. Healthy,* infra, 429 U.S. at 276, 97 S.Ct. at 570, quoting *St. Paul Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* Viewing Cale's complaint under these criteria, we cannot find to a legal certainty that the amount in controversy was insufficient, and the bona fides of his claim for $50,000 in damages have not been questioned here.

■ Although often litigated of late in the inferior federal courts, neither this court nor the Supreme Court has yet answered the question of whether or not an implied cause of action for damages exists against a municipality for the act of its employee under the Fourteenth Amendment with jurisdiction under 28 U.S.C. § 1331, without the limitations imposed by § 1983. We hold that it does not. Our opinion that no action of the type exemplified by *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), should be so implied from the Fourteenth Amendment rests upon our opinion as to the meaning of the amendment in the light of its wording, background, congressional action, and court decisions construing it.

■ While it is true that the federal courts have determined the constitutionali-

ty of State and federal legislation under the Fourteenth Amendment,[1] Cale does not ask us merely to enforce the prohibitions of the Fourteenth Amendment as measured against a statute or regulation. Rather, he asks us to imply a cause of action for damages in that he was discharged in violation of the due process clause of the Fourteenth Amendment because the discharge was without proper notice or hearing.

The beginning point of our analysis is the amendment itself, ratified in 1868. Our particular concerns are §§ 1 and 5 thereof. Section 1, in pertinent part, provides that no State shall "deprive any person of life, liberty, or property without due process of law." Section 5 states that "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." We also consider 28 U.S.C. § 1331(a), which, for our purposes, was enacted in 1875.[2] It provides for original jurisdiction in the district courts over "all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . ."

■ It is too well documented to bear citation that federal courts are courts of limited jurisdiction and especially the inferior federal courts. And "in the legal system generally a jurisdictional grant does not in and of itself necessarily—or even ordinarily—imply a power to make substantive rules of decision. . . ." *The Federal Courts and the Federal System,* Bator, Shapiro, Mishkin, and Wechsler (2d ed. 1973), p. 786. We need go no further than these elementary rules to arrive at our conclusion that the enactment of § 1331 did not of itself create any cause of action, nor do we think that one may be implied from the mere grant of jurisdiction. So, if there is to

---

1. For example, in the *Slaughter-House Cases,* 16 Wall. 36, 21 L.Ed. 394 (1872), the Supreme Court reviewed the constitutionality of a Louisiana statute under the Fourteenth Amendment. In the *Civil Rights Cases,* 109 U.S. 3, 15, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the Court reviewed the constitutionality of different sections of the congressional legislation upheld in

*Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1880).

2. A previous provision for catchall federal question jurisdiction was short lived, from 1801 to 1802. Wright, Miller, & Cooper, *Federal Practice and Procedure* (1975), § 3563, n. 3.

be a cause of action implied in favor of the plaintiff against the City of Covington, it must be directly under the Constitution and in our case more particularly under the due process clause of the Fourteenth Amendment.

Due process decisions, especially in recent years, have reached endless number. To repeat, plaintiff's claim is based on the now familiar allegation that he was discharged as a policeman by the Chief of Police of the City of Covington without a hearing. He claims that his discharge without a hearing is a violation of the due process clause.

Assuming for the moment, without deciding, the validity of the plaintiff's cause of action as alleged, the question arises as to whether there is jurisdiction in a federal court to hear it. This question has been answered in the affirmative for suits under § 1331 in *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), but the consideration of whether or not there is jurisdiction and whether or not a cause of action is stated are different questions. *Mt. Healthy,* p. 278, 97 S.Ct. 568; *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Had the plaintiff sued the Chief of Police, he clearly may have stated a cause of action under § 1983, and we have directed remand on the issue of the City's liability under § 1983 as construed by *Monell.* But the plaintiff persists that he has a right to sue the City, even apart from § 1983, for damages directly under the Fourteenth Amendment, claiming jurisdiction under § 1331. We thus turn to the question of whether or not to imply a cause of action under the Fourteenth Amendment against the City of Covington on account of the actions of its employee.

There have been many opinions in the inferior federal courts which discuss the question, and we do not attempt to analyze

them all or collect them here. Some are holdings directly on the point; some are more or less on the point; and some decide the jurisdictional question but speak of the cause of action.[3]

On facts very similar to the case at hand, the Eighth Circuit, in *Owen v. City of Independence,* 560 F.2d 925 (8th Cir. 1977), on account of the firing of a Chief of Police by the City Manager, held, under § 1331 jurisdiction, that there was an implied cause of action under the Fourteenth Amendment due process clause.[4] A similar holding was apparently made in *Hanna v. Drobnick,* 514 F.2d 393 (6th Cir. 1975), on account of the inspections of a building inspector under a city ordinance claimed to be invalid. The question in *Hanna,* however, concerned Fourth Amendment rights asserted under the Fourteenth Amendment. Both *Hanna* and *Owen* relied on *Bivens.* The Second Circuit, in *Gentile v. Wallen,* 562 F.2d 193 (2d Cir. 1977), a suit against a School Board, made the same holding against the board when it refused to grant tenure. As did *Hanna* and *Owen, Gentile* relied on *Bivens.*

The First Circuit, however, in *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977), held, to the contrary, that there was no implied cause of action for damages under the Fourteenth Amendment resulting from the shooting of the plaintiff's decedent by a police officer.

The Third Circuit, in two cases, has made it clear that it has not decided the question: *Gagliardi v. Flint,* 564 F.2d 112, 115, n. 3 (3d Cir. 1977), cert. den., —— U.S. ——, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Mahone v. Waddle,* 564 F.2d 1018, 1024–25 (3d Cir. 1977), cert. den., —— U.S. ——, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). The Tenth Circuit also has not decided the question. *Weathers v. West Yuma County School District,* 530 F.2d 1335, 1342 (10th Cir. 1976).

---

**3.** The cases and many other authorities are collected in the opinions we cite and in Professor Dellinger's article, infra. See also Note: Damage Remedies Against Municipalities for Constitutional Violations, 89 Harv.L.Rev. 922 (1976).

**4.** Certiorari was granted, however, in *Owen.* The judgment of the court of appeals was vacated without opinion and the case remanded for further consideration in the light of *Monell.* —— U.S. ——, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978).

The Fifth and Seventh and Ninth Circuits have also discussed the question. We note that the holdings in those cases may strictly be said to relate to jurisdiction, and they were decided following *Bivens* and do not discuss that case. But, while their discussions may not be squarely on point, we should in candor relate that they indicate, if called upon to decide the question, those courts would probably decide that there was an implied cause of action under the Fourteenth Amendment with jurisdiction under § 1331 if they follow the thoughts expressed in the cases just following: see *Fitzgerald v. Porter Mem. Hosp.*, 523 F.2d 716, 718, n. 7 (7th Cir. 1975); *Gray v. Union Co. Intermediate Education District*, 520 F.2d 803 (9th Cir. 1975); *Roane v. Callisburg Independent School District*, 511 F.2d 633 (5th Cir. 1975); *Stapp v. Avoyelles Parish School Bd.*, 545 F.2d 527, 531, n. 7 (5th Cir. 1977); [5] *Hostrop v. Bd. of Jr. College District No. 515*, 523 F.2d 569 (7th Cir. 1975).

The Sixth Circuit, in *Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976), has held there was § 1331 jurisdiction with respect to the condemnation of real estate in a claim under the Fourteenth Amendment. Cf. *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933).

In our own circuit, *Burt v. Board of Trustees*, 521 F.2d 1201, 1205 (4th Cir. 1975), and *Singleton v. Vance County Board of Education*, 501 F.2d 429 (4th Cir. 1974), have alluded to the question but not decided it.

The cases which have held that the cause of action may be implied have generally followed that part of the reasoning of *Bivens* which concludes that when a general statute provides for a right to sue for an invasion of a federally protected right, federal courts may use any available remedy to make good the wrong done. See also *Bell v. Hood*, 327 U.S. p. 684, 66 S.Ct. 773, *Kostka* analyzed *Bivens* differently, holding that its reasoning taught caution, making analogy to the case of a claim that an implied cause of action arose from a statute which had not explicitly created one. See *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). It found that *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), was based on an affirmative policy against federal court imposition of liability on political subdivisions.[6] The *Kostka* court found that a damages action was not indispensable to the effectuation of the Fourteenth Amendment and held that there was no implied cause of action.

While the Supreme Court, in *Mt. Healthy*, has made it clear that it has not decided the question, there are cases which have mentioned it, early as well as late.

One of these is *Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1880). In that case, which construed § 5 of the Fourteenth Amendment and the extent of congressional authority (which it upheld) granted under the amendment, the court said:

"It is not said the judicial power of the general government shall extend to enforcing the prohibitions and to protecting the rights and immunities guaranteed. It is not said that that branch of the government shall be authorized to declare void any action of a State in violation of the prohibitions. It is the power of Congress which has been enlarged. Congress is authorized to *enforce* the prohibitions by appropriate legislation. Some legislation is contemplated to make the amendments fully effective." 100 U.S. 339, 345, 25 L.Ed. 676 (Italics are the Court's).[7]

*Ex parte Virginia* was closely followed by the *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct.

---

**5.** But see *Davis v. Passman*, 571 F.2d 793 (5th Cir. 1978) (en banc), which, somewhat contrary to a holding in this circuit in *State's Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974), held there was *no* implied cause of action under the Fifth Amendment against a federal officer as an individual for a discharge from employment claimed to be on account of the sex of the plaintiff.

**6.** This construction of *Aldinger v. Howard* should now be reconsidered in light of *Monell*. See 436 U.S. at 696, n. 61, 701, n. 66, 98 S.Ct. at 2039, 2041.

**7.** We note the reliance of *Monell* upon *Ex parte Virginia*. 436 U.S. at 683, n. 44, 690, n. 54, 98 S.Ct. 2032, 2035.

18, 27 L.Ed. 835 (1883), in which the Court reviewed the validity of an act of Congress providing for equality of accommodations and transportation as against the authority granted by the Thirteenth and Fourteenth Amendments. The Court held invalid a part of the statute complained of. In the *Slaughter-House Cases*, 16 Wall. 36, 21 L.Ed. 394 (Dec. Term 1872), the Court upheld the validity of a Louisiana statute regulating slaughter-houses when measured against the Fourteenth Amendment.

It is true that in the *Civil Rights Cases* the Court referred to the Fourteenth Amendment as self-executing, 109 U.S. at 20, 3 S.Ct. 18, when discussing the Fifteenth, but it is also true that earlier in the opinion, discussing § 1 of the Fourteenth Amendment, the court stated: "in order that the national will, thus declared, may not be a mere *brutum fulmen*, the last section of the amendment invests Congress with power to enforce it by appropriate legislation." The *Civil Rights Cases* did not overrule *Ex parte Virginia*, and any apparent inconsistency between the two just quoted statements in the *Civil Rights Cases* may be resolved, we think, by reference to the protection the Fourteenth Amendment provided of its own force as a shield under the doctrine of judicial review. See the dissent of Mr. Justice Harlan in the *Civil Rights Cases* quoted infra. See also the *Slaughter-House Cases*, 16 Wall. at 81, where the Court, referring to the equal protection clause of the Fourteenth Amendment, had stated that when it is a State dealt with and not alone the validity of a State law, the matter should be left until Congress should has exercised its power or some case of State oppression by denial of equal justice in its courts claims a decision at the hands of the Supreme Court. Another early opinion, not by the Supreme Court but by Chief Justice Chase sitting as a Circuit Justice, is *Griffin's Case*, 11 Fed. Cases 7 (C.C.D.Va.1869), which held that the third section of the Fourteenth Amendment, concerning disqualifications to hold office, was not self-executing absent congressional action.

Certainly the courts which decided these cases were aware of *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), and *Martin v. Hunter's Lessee*, 1 Wheat. 304, 4 L.Ed. 97 (1816), and their contemporaneous understanding of the meaning of the Fourteenth Amendment, which we think coincided with the understanding of Congress, should be given consideration. We do not believe the statements in *Ex parte Virginia*, the *Slaughter-House Cases*, and the *Civil Rights Cases* as to the meaning of the Fourteenth Amendment are inconsistent or that they meant to overrule *sub silentio Marbury* or more especially *Martin*. The courts were entirely familiar with the doctrine of judicial review by that time, and the understanding of this is stated by the first Justice Harlan in his dissent on other grounds in the *Civil Rights Cases* at pages 45 and 46 of the opinion of 109 U.S. at page 46 of 3 S.Ct.

"The Fourteenth Amendment presents the first instance in our history of the investiture of congress with affirmative power, by *legislation*, to *enforce* an express prohibition upon the States. It is not said that the *judicial* power of the nation may be exerted for the enforcement of that amendment. No enlargement of the judicial power was required, for it is clear that had the fifth section of the fourteenth amendment been entirely omitted, the judiciary could have stricken down all state laws and nullified all state proceedings in hostility to rights and privileges secured or recognized by that amendment. The power given is, in terms, by congressional *legislation*, to enforce the provisions of the amendment."

With this understanding in mind, we believe that the Congress and Supreme Court of the time were in agreement that affirmative relief under the amendment should come from Congress.

When we add to this state of affairs *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which far-reaching opinion provided that an officer of a State could be required as an individual to perform his public duties in a constitutional manner, we see that litigants having suffered a viola-

tion of their constitutional rights were protected in all instances; that is to say, the right was protected in all instances.

What we think is clear is that the right was protected either by *Marbury v. Madison,* or *Martin v. Hunter's Lessee,* or by § 1983, or by *Ex parte Young.* It is not doubted that the remedy may not be coextensive under any of these theories of judicial review or legislation for the protection of constitutional rights.

The acceptance of the teaching of these cases is undoubted and almost universal. Not without significance is that, in the 103 years of the present existence of § 1331, the Court has not decided the question now before us. Professor Dellinger, in his article on the subject, *Of Rights and Remedies: The Constitution as a Sword,* 85 Harv.L. Rev. 1532 (1972), states that ". . . with one exception [footnote omitted] prior to *Bivens* the court has never explicitly exercised the judicial power to create a damage remedy in a case arising under the Constitution . . .," that exception being *Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933). And even in *Jacobs* the Court may have only recited that the suit was based on the right to recover just compensation for property taken by the United States for public use in exercise of its power of eminent domain and rested upon the Fifth Amendment. So the exception of *Jacobs* to the general rule thus may not be taken as beyond doubt. *Arant v. Lane,* 245 U.S. 166, 170, 38 S.Ct. 94, 62 L.Ed. 223 (1917). This understanding is echoed by Professor Moore in *Moore's Federal Practice,* Vol. I (1977), p. 665, where he states "In most instances, on the other hand [referring to *Bivens*], the Constitution unaided by statute does not create rights against private parties.[8]

On the whole case, as previously indicated, we are of opinion there is no implied cause of action against the municipality under the Fourteenth Amendment, with juris-

diction under § 1331, for the acts of one of its employees.

We give weight to the fact that the amendment itself authorizes action by Congress, which Congress has exercised in § 1983, and which, even under *Monell,* does not permit untrammeled municipal liability. We also give weight to the reasoning that the granting of money damages against a municipality in the absence of legislative authorization actively involves the judiciary in policy decisions relating to the allocation of limited resources which in certain instances may raise serious questions concerning the enforceability of a court's mandate. See Dellinger, p. 1533. Also taken into account is the fact that the plaintiff here has a remedy, perhaps not perfect, but that which was contemplated by Congress.

In our case, affirmative action by Congress should counsel hesitation. *Bivens,* 403 U.S. p. 396, 91 S.Ct. 1999.

In contrast to *Bivens,* which did not deal "with a question of 'federal fiscal policy' " by allowing a suit against federal agents, we do deal with a question of State fiscal policy should we permit a suit against a municipal corporation based on *respondeat superior* and not subject to the limitations of § 1983, the only source for satisfaction of a judgment against it being the taxpayers who furnish the money to the municipality. Again, in contrast to *Bivens* which had no formulation of congressional policy as to whether the availability of money damages was necessary to enforce the Fourth Amendment, we have here a congressional policy that while money damages against an individual may be necessary to enforce the Fourteenth Amendment, they are in certain circumstances inappropriate against municipalities on account of the same act of the same employee.

■ Finally and not of the least importance, should we give as our opinion that there is an implied cause of action under the Fourteenth Amendment in the setting

---

8. Wright, Miller and Cooper address the precise question before us and state that the general tenor of the *Aldinger* opinion "suggests that the Court may be unwilling to imply a

damages remedy that Congress has deliberately refused to give." 1977 Pocket Part, § 3573. This statement, of course, was written before the decision in *Monell.*

here, it would seem impossible for Congress to undo it for the federal courts in adjudicating such acts of Congress would enter into a balancing procedure to ascertain whether the remedy enacted by Congress is as adequate as a court implied remedy. That to us would seem to be a violation of the fifth clause of the Fourteenth Amendment which has expressly entrusted to Congress the "power to enforce, by appropriate legislation, the provisions of this article." As *Monell* holds, Congress has done just this. We doubt that we should take away this constitutionally entrusted power by judicial decision. Indeed, it seems that our authority so to do is little better than doubtful if it should exist at all.

The judgment of the district court must be vacated and the case remanded. On remand, Cale should be allowed to proceed with his action under § 1983, but not allowed to proceed with it insofar as he claims it is based on an implied cause of action under the Fourteenth Amendment.

VACATED AND REMANDED.